UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

------------------------------------------------------ x
                                                       :
Adelphia Recovery Trust,                               :
                                                       :
                              Plaintiff,               :
                                                       :   Case No. 1:09-cv-00215-RJA
                    -against-                           :
                                                       :
Key Bank National Association, HSBC                    :
Bank USA, National Association and Fleet               :
National Bank,                                         :
                                                       :
                              Defendants.              :
                                                       :
------------------------------------------------------ x


**THE ADELPHIA RECOVERY TRUST'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE
COUNTERCLAIMS ASSERTED BY HSBC BANK USA, NATIONAL ASSOCIATION**


KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

Counsel for Adelphia Recovery Trust

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I.   HSBC'S "POST-PETITION TORT" COUNTERCLAIM
     FOR NEGLIGENT MISREPRESENTATION SHOULD
     BE DISMISSED ........................................................................................................ 2

     A.   HSBC Did Not Suffer Any Damages Resulting From
          Adelphia's Conduct At The Sale Hearing ........................................................ 2

          1.   Adelphia's Conduct At The Sale Hearing Did
               Not Damage HSBC Because HSBC Could Not
               Have Forced Hockey Western To Pay More For
               The Sabres' Assets. ............................................................................... 3

          2.   The Attorneys' Fees Expended By HSBC In
               Defending The Fraudulent Conveyance Claims
               Are Not Damages .................................................................................. 5

     B.   There Is No Such Claim As A "Post-Petition Tort" ........................................ 6

     C.   HSBC Has Not Pleaded The Elements Of Negligent
          Misrepresentation ............................................................................................ 7

          1.   Adelphia Did Not Have A Special Or Fiduciary
               Relationship With HSBC Giving Rise To A
               Duty To Speak ...................................................................................... 8

          2.   HSBC Has Not Alleged That Adelphia
               Misrepresented A Present, Material Fact ............................................. 10

          3.   HSBC Cannot Allege, As A Matter Of Law,
               Reasonable Reliance On Adelphia's Silence
               At The Sale Hearing .............................................................................. 11

II.  THE INDEMNIFICATION AND CONTRIBUTION
     COUNTERCLAIMS SHOULD BE DISMISSED ..................................................... 14

     A.   HSBC Cannot Seek Indemnification From Adelphia
          For Costs Incurred In Defending The Fraudulent
          Conveyance Claims Because It Did Not File A Proof
          Of Claim In Adelphia's Bankruptcy. ............................................................... 14

     B.   There Is No Claim Under New York Law For Contribution
          To Defray  Attorneys' Fees Expended In Defending A
          Fraudulent Conveyance Claim. ........................................................................ 17

CONCLUSION ................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

<u>C</u>ASES

Adelphia Recovery Trust v. HSBC Bank USA
   (In re Adelphia Recovery Trust),
   634 F.3d 678 (2d Cir. 2011)......................................................................4, 8, 12

Ashcroft v. Iqbal,
   556 U.S. 662, 129 S. Ct. 1937 (2009)...........................................................5

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007)........................................................................................5

Bfp v. Resolution Trust Corp.,
   511 U.S. 531 (1994)........................................................................................5

Goldberg v. Mallinckrodt, Inc.,
   792 F.2d 305 (2d Cir. 1986)...........................................................................5

HSBC Bank USA, N.A. v. Adelphia Communs. Corp.,
   No. 07 Civ. 553A, 2009 U.S. Dist. LEXIS 10675
   (W.D.N.Y. Feb. 12, 2009) ............................................................................12

Hydro Investors, Inc. v. Trafalgar Power Inc.,
   227 F.3d 8 (2d Cir. 2000)......................................................................8, 10, 11

In re AHT Corp.,
   292 B.R. 734 (S.D.N.Y. 2003).....................................................................10

In re Citigroup, Inc., Auction Rate Sec. Mktg. Litig.,
   No. 08 Civ. 3095, 2011 U.S. Dist. LEXIS 19854
   (S.D.N.Y. Mar. 1, 2011) ..............................................................................13

In re Houbigant, Inc.,
   188 B.R. 347 (Bankr. S.D.N.Y. 1995)........................................................16

In re Manville Forest Prods.,
   209 F.3d 125 (2d Cir. 2000)....................................................................16, 17

In re Met-L-Wood Corp.,
   115 B.R. 133 (N.D. Ill. 1990) ........................................................................6

In re Refco Secs. Litig.,
   No. 07 Civ. 8663, 2011 U.S. Dist. LEXIS 44724
   (S.D.N.Y. Apr. 10, 2011)...............................................................................5

In re Rickel & Assocs., Inc.,
    272 B.R. 74 (Bankr. S.D.N.Y. 2002)......................................................9, 10

In re Teligent, Inc.,
    282 B.R. 765 (Bankr. S.D.N.Y. 2002).........................................................10

In re Women First Healthcare, Inc.,
    332 B.R. 115 (Bankr. D. Del. 2005) ............................................................10

Marbury Management, Inc. v. Kohn,
    629 F.2d 705 (2d Cir. 1980)...........................................................................7

New York Marine & Gen. Ins. Co. v. Tradeline L.L.C.,
    No. 98 Civ. 7840, 1999 U.S. Dist. LEXIS 20022
    (S.D.N.Y. Dec. 29, 1999)...........................................................................6, 7

Pension Comm. of the Univ. of Montreal Pension Plan v.
    Banc of Am. Sec., LLC,
    446 F. Supp. 2d 163 (S.D.N.Y. 2006)........................................................8, 9

Perkins Eastman Architects, P.C. v. Thor Eng'rs, P.A.,
    769 F. Supp. 2d 322 (S.D.N.Y. 2011)..........................................................18

Siemens Westinghouse Power Corp. v. Dick Corp.,
    299 F. Supp. 2d 242 (S.D.N.Y. 2004)..........................................................13

Simon v. Safelite Glass Corp.,
    128 F.3d 68 (2d Cir. 1997)...........................................................................12

Simonton v. Runyon,
    232 F.3d 33 (2d Cir. 2000).............................................................................7

Structure Tone, Inc. v. Universal Servs. Group, Ltd.,
    929 N.Y.S.2d 242 (1st Dep't 2011) ..............................................................18

Tower Bldg. Restoration, Inc. v. 20 E. 9th St. Apt. Corp.,
    744 N.Y.S.2d 319 (1st Dep't 2002) ..............................................................18

Washington Temple Church of God in Christ, Inc. v.
    Global Props. & Assoc., Inc.,
    841 N.Y.S.2d 824 (Sup. Ct. 2007)................................................................13

Wendell v. New York State,
    No. 04 Civ. 2889, 2006 U.S. Dist. LEXIS 26738
    (E.D.N.Y. May 5, 2006) .................................................................................7

## S<span>TATUTES</span>

11 U.S.C. § 101 ......................................................................................................................16

11 U.S.C. § 101(5) .................................................................................................................16

11 U.S.C. § 330(a)(2) ..............................................................................................................6

11 U.S.C. § 363(b)(1) ..............................................................................................................4

The Adelphia Recovery Trust (the "Trust"), respectfully submits this reply memorandum of law in further support of its motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the three counterclaims asserted by HSBC Bank USA, National Association ("HSBC") ("post-petition tort," indemnification and contribution).

## PRELIMINARY STATEMENT

In its opening brief, the Trust established that HSBC's counterclaim for "post-petition tort" should be dismissed as a matter of law, and not merely because there is no such claim in state or federal law.  Even if HSBC could craft such a claim arising out of the harm it asserted it would suffer because of the Trust's fraudulent conveyance claims, those claims have been dismissed by the Second Circuit and therefore HSBC has not suffered, and will not suffer, any damages.  The Trust also demonstrated that HSBC's indemnification claim fails as a matter of law because a party cannot be indemnified for losses stemming from its own intentional torts.  Nor is contribution available because Adelphia did not commit any act recognized by the common law that would entitle the bank to contribution.

Nothing in HSBC's opposition brief alters these fundamental factual and legal conclusions.  HSBC attempts to save its "post-petition tort" counterclaim by arguing that Adelphia's actions at the Sale Hearing deprived it of the opportunity to force Adelphia to force Hockey Western to pay more than it originally bid for the Sabres' assets.  Had Hockey Western paid more, HSBC speculates, Adelphia's aiding and abetting damages that the Trust seeks to recover from HSBC might have been lower.  As demonstrated below, however, this theory does not withstand legal or factual scrutiny, and its implausibility requires dismissal.  In order to save its indemnification and contribution counterclaims, HSBC no longer seeks to require Adelphia to contribute to, or hold HSBC harmless from, a judgment on the aiding and abetting claim.

Instead, it seeks to require Adelphia to defray the attorneys' fees it has incurred in defending the

fraudulent conveyance claims based on a March 2000 indemnification contract ostensibly

between Adelphia and the bank.  HSBC's claim for indemnification based on this contract,

however, is a claim against Adelphia that arose before Adelphia filed for bankruptcy in June

2002, and HSBC's failure to file a Proof of Claim in Adelphia's bankruptcy before Judge Gerber

requires its dismissal.  Finally, the law only requires a defendant, under certain conditions, to

contribute to a tort judgment rendered against the plaintiff.  Attorneys' fees, of course, are not a

tort judgment and hence the contribution counterclaim should be dismissed as well.

## ARGUMENT

## I.

## HSBC'S "POST-PETITION TORT" COUNTERCLAIM FOR NEGLIGENT MISREPRESENTATION SHOULD BE DISMISSED.

As demonstrated below, HSBC's "post-petition tort" counterclaim, which it has

occasionally characterized as a claim for negligent misrepresentation, fails as a matter of law

because HSBC has not demonstrated that, even accepting its allegations as true, it has suffered

any damages recognized in law, and it has failed to allege the necessary elements of the tort of

negligent misrepresentation.

### A.     HSBC Did Not Suffer Any Damages Resulting From Adelphia's Conduct At The Sale Hearing.

The Trust established in its opening brief that HSBC's "post-petition tort" counterclaim

completely lacks merit because it did not suffer any compensable damages as a result of

Adelphia's actions at the Sale Hearing.  The sole factual predicate of HSBC's counterclaim was

that it was deprived of the opportunity to rescind the fraudulent conveyances asserted in Claims

17-24 because Adelphia had released its liens in the Sabres' assets.  The Trust demonstrated that

because Claims 17-24 have been dismissed, there is no longer any legal or factual basis upon which HSBC can assert a claim against Adelphia.

In its opposition brief, HSBC concedes that it has suffered no damages stemming from a possible judgment on Claims 17-24.  (HSBC Opp. Br. at 13.)  Instead, HSBC now argues that it will be damaged because of Adelphia's actions at the Sale Hearing if it is found liable for aiding and abetting John Rigas's breach of his fiduciary duties (Claim 56).  HSBC also argues that it is entitled to recover as damages the attorneys' fees it has incurred in defending the Trust's fraudulent conveyance claims.  As demonstrated below:  (i) HSBC's new theory as to how it was damaged vis-à-vis Claim 56 is purely speculative and implausible (and was not even pleaded in its counterclaim); and (ii) American law does not recognize attorneys' fees as damages caused by a tort.

> **1.    Adelphia's Conduct At The Sale Hearing Did Not Damage HSBC Because HSBC Could Not Have Forced Hockey Western To Pay More For The Sabres' Assets.**

HSBC asserts that Adelphia committed some undefined tortious act by not informing the Bankruptcy Court or HSBC at the time of the sale that the company's Special Committee was investigating John Rigas's involvement with the Buffalo Sabres for potential fraudulent conveyance claims, even though that investigation was reported in Adelphia's public SEC filings.  In moving to dismiss Claims 17-24, HSBC argued that, as a potential future fraudulent conveyance claim defendant, it had an interest in the property being sold, and had standing to object to the sale.  Therefore, had it been informed of the investigation, it could have blocked the sale unless it was protected from a judgment against it on Claims 17-24.

Now that Claims 17-24 are gone, HSBC attempts to save this counterclaim by making the same argument vis-à-vis Claim 56 for aiding and abetting.  That is, HSBC now argues that it was injured by Adelphia because, "[h]ad HSBC known of its contingent interests in Niagara's assets,

it could have participated in Niagara's sale process and <u>required Adelphia to obtain greater value in consideration for releasing the liens</u>." (HSBC Opp. Br. at 13) (emphasis added).[1] There is no basis in common law or bankruptcy law for the argument that a potential aiding and abetting defendant has standing to oppose the sale of a debtor's assets and, in the words of HSBC, "<u>compel</u> Adelphia to obtain greater value for [the Sabres'] assets, thereby limiting Adelphia's alleged damages against HSBC and the other Sabres Banks" in connection with Claim 56. <u>Id</u>. (emphasis added).

Significantly, HSBC fails to cite a single case, statutory provision, or rule in support of its legal and factual theory. There are none. It is simply implausible to assert in a pleading that Adelphia, as a creditor in the <u>In re NFHLP</u> bankruptcy case, could have forced Hockey Western to pay more for the Sabres' assets than it was originally willing to do, so that Adelphia could mitigate its damages in an aiding and abetting case against another non-debtor, HSBC, that might or might not happen years hence. The assets being sold did not belong to Adelphia, a separate entity in its own bankruptcy case in an entirely different district; they belonged to NFHLP. Under the Bankruptcy Code, only NFHLP, as a debtor in possession, could sell its assets. 11 U.S.C. § 363(b)(1) ("The trustee [or a debtor in possession under chapter 11], after notice and a hearing, may use, sell, or lease . . . property of the estate[.]"). In short, Adelphia was in no position legally to "obtain greater value" in the sale.

The same is true factually because Hockey Western *was the only bidder*. Declaration of David J. Shapiro, January 20, 2012 ("Shapiro Decl."), Ex. A (April 10, 2003 Approval Order).

---

[1] The Second Circuit agreed that, as a potential fraudulent conveyance defendant, the possibility existed that HSBC would subsequently have a right to seek rescission of the conveyances and get back from Adelphia the loans (and the liens supporting them). <u>Adelphia Recovery Trust v. HSBC Bank USA (In re Adelphia Recovery Trust)</u>, 634 F.3d 678, 697 (2d Cir. 2011). HSBC does not argue (nor could it), that a potential aiding and abetting defendant has the same right and therefore suffered damages because of Adelphia's silence. In other words, HSBC has not, and cannot, argue that Adelphia's silence deprived HSBC of the opportunity to "undo" the aiding and abetting transactions.

Furthermore, Judge Kaplan ruled in NFHLP's bankruptcy that, as a matter of law and fact, the amount bid by Hockey Western was the "highest and best" offer.  Id. at 4.  Judge Kaplan's ruling on the purchase price for the Sabres' assets cannot be challenged now, in hindsight, via HSBC's counterclaim.  Cf. Bfp v. Resolution Trust Corp., 511 U.S. 531 (1994) (consideration received from a non-collusive sale of property conclusively satisfied the Bankruptcy Code's requirement that transfers of property by insolvent debtors was in exchange for reasonably equivalent value).  Under these circumstances, HSBC's theory that Adelphia could have obtained "greater value" from the sale is, at best, factually and legally implausible, if not impossible.[2]  Accordingly, HSBC's counterclaim should be dismissed under Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."), and its progeny.  See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009) ("only a complaint that states a plausible claim for relief survives a motion to dismiss.").

##### 2.     The Attorneys' Fees Expended By HSBC In Defending The Fraudulent Conveyance Claims Are Not Damages.

HSBC also asserts that the money it spent defending against the Trust's fraudulent conveyance claims are "damages" it can recover via its "post-petition tort" counterclaim.  (HSBC Opp. Br. at 14.)  In its opening brief, however, the Trust established that American law does not recognize attorneys' fees as damages flowing from a common law tort.  Goldberg v. Mallinckrodt, Inc., 792 F.2d 305, 309 (2d Cir. 1986) ("The general rule of course is that attorney's fees are not recoverable as damages."); In re Refco Secs. Litig., No. 07 Civ. 8663,

---

[2] At most, HSBC might be able to argue that the Trust's claim for damages must be reduced for failure to mitigate, but even that would be highly speculative.  It certainly cannot be an affirmative damages claim.  For a more complete discussion of the implausibility of HSBC's claim that it could have "required" Adelphia to obtain "greater value" from Hockey Western for the Sabres' assets, see the Trust's Brief in Opposition to the Sabres Banks' Motion to Dismiss Claims 56 and 57 at 20-21.

2011 U.S. Dist. LEXIS 44724 at *44 (S.D.N.Y. Apr. 10, 2011) ("The American Rule on fees plainly prohibits recovery of monies expended in a litigation to recover for an underlying wrong.").

In an attempt to circumvent the well-established "American rule," HSBC relies on a single case from the Northern District of Illinois, In re Met-L-Wood Corp., 115 B.R. 133 (N.D. Ill. 1990).  That case did not single-handedly change hundreds of years of common law.  In Met-L-Wood, a debtor's counsel was accused by the trustee of certain tortious acts.  The debtor's counsel, therefore, had to retain its own law firm and incurred legal fees in so doing.  Id. at 134-35.  The debtor's counsel sought reimbursement from the estate.  The Bankruptcy Court ruled that the fees incurred were "administrative expenses" under 11 U.S.C. § 330(a)(2).  As the court explained, this statute "allows reimbursement for the actual, necessary expenses of the Debtor's attorney."  Id. at 135.  The debtor's counsel did not seek recovery of his legal fees as damages flowing from the trustee's tort, but rather as an entitlement under the Bankruptcy Code based on its status as counsel for the debtor.  Met-L-Wood, therefore, does not support HSBC's assertion that the fees it incurred in defending Claims 17-24 are tort "damages" flowing from Adelphia's silence at the Sale Hearing.

**B.      There Is No Such Claim As A "Post-Petition Tort."**

The Trust demonstrated in its opening brief that HSBC's "First Claim for Relief" should be dismissed because American law does not recognize a cause of action for "post-petition tort."  HSBC concedes this point but asserts that it is not required to identify in its pleading an underlying cause of action.  (HSBC Opp. Br. at 5-6.)  This is not the law in the Second Circuit.  If the plaintiff fails to identify the cause of action upon which he is suing, the complaint is dismissed.  See, e.g., New York Marine & Gen. Ins. Co. v. Tradeline L.L.C., No. 98 Civ. 7840, 1999 U.S. Dist. LEXIS 20022, at *13 (S.D.N.Y. Dec. 29, 1999) (claim dismissed for failure to

identify tort by which conduct would be actionable); <u>Wendell v. New York State</u>, No. 04 Civ.
2889, 2006 U.S. Dist. LEXIS 26738, *4 (E.D.N.Y. May 5, 2006) (complaint dismissed where it
did not "put defendant on notice of what [plaintiff's] claims are").

The cases HSBC cites in support of its contention that its failure to identify a recognized
cause of action should be excused are inapposite.  In <u>Simonton v. Runyon</u>, 232 F.3d 33, 34 (2d
Cir. 2000), for example, the complaint stated that the plaintiff's claim was brought "under Title
VII of the Civil Rights Act of 1964."  This, the court held, was sufficient to allow it to consider
whether the plaintiff could recover for multiple forms of discrimination under the statute.  <u>Id</u>. at
36-37.  The complaint survived because the plaintiff made clear the legal basis for its cause of
action.  That is not true here.  Similarly, in <u>Marbury Management, Inc. v. Kohn</u>, 629 F.2d 705,
711 (2d Cir. 1980), the complaint stated that the plaintiff was suing his former employer under §
10(b) of the Securities Exchange Act of 1934.  This put the defendant on notice that he could be
held liable under the theory of <i>respondeat superior</i>, even though the complaint did not contain
those words.  <u>Id</u>. at 707.  The complaint identified the cause of action pursuant to which the
plaintiff was suing and hence it survived a Rule 12(b)(6) attack.  HSBC's first counterclaim, on
the other hand, fails because it does not identify a recognized American tort.  <u>New York Marine
& Gen. Ins. Co.</u>, 1999 U.S. Dist. LEXIS 20022, at *13 (claim dismissed for failure to identify
tort by which conduct would be actionable).

## C.    <u>HSBC Has Not Pleaded The Elements Of Negligent Misrepresentation.</u>

The Trust demonstrated in its opening brief that, even assuming the Court were to give
HSBC the benefit of the doubt and treat its "Post-Petition Tort" claim as a claim for negligent
misrepresentation, HSBC has failed to plead the essential elements of such a claim:  (i) a special
or fiduciary relationship with HSBC giving rise to a duty to speak; (ii) the misrepresentation of a

present, material fact; and (iii) reasonable reliance.  Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d Cir. 2000).

HSBC's attempt to wrest from its allegations these essential elements is unavailing.

**1.     Adelphia Did Not Have A Special Or Fiduciary
Relationship With HSBC Giving Rise To A Duty To Speak.**

HSBC concedes that Adelphia was not in privity with HSBC at the time of the Sale Hearing.  (HSBC Opp. Br. at 9.)  Nonetheless, HSBC now asserts that Adelphia had a duty to inform it of all possible future claims against it based on HSBC's status as a potential fraudulent conveyance defendant.  Id.  HSBC does not cite a single authority for the proposition that, in the context of a claim for negligent misrepresentation, a creditor in a Section 363 sale has a duty to disclose the status of the investigations in its own bankruptcy of future possible claims against non-creditors in another debtor's case (especially when the putative plaintiff has publicly disclosed the investigations in its SEC filings).[3]

Instead, HSBC relies on Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 446 F. Supp. 2d 163, 199 (S.D.N.Y. 2006), which articulated a three-part test for determining whether "a non-privy relationship [gives] rise to a duty to give correct information."  The case is not applicable here.  In Pension Comm., the plaintiffs had invested in certain hedge funds.  The defendants administered the funds, made statements about the value of the funds, and the plaintiffs relied to their detriment on the uncorrected statements of value.  The plaintiffs' complaint for negligence, negligent misrepresentation, and professional malpractice (but not securities fraud) survived because, the court reasoned, the complaint alleged that the

---

[3] As the Trust discussed in its opening brief, the Second Circuit's decision is not to the contrary.  The court did not hold that Adelphia had violated a duty to HSBC when it failed to discuss the Special Committee's investigation in response to a question by Judge Kaplan.  The court simply held that there were consequences to a position adopted by Adelphia in the Sabres' bankruptcy which foreclosed the taking of a different position in Claims 17-24.  Adelphia Recovery Trust, 634 F.3d at 697.  Judicial estoppel is not negligent misrepresentation.

statements were specifically designed to induce reliance by such investors and the defendants

were the only source of the value of the funds:

> The [defendants] argue that plaintiffs fail to allege contractual
> privity or a bond 'so close as to approach that of privity.'
> However, it is reasonable to infer from the Complaint that the
> [defendants] were aware that plaintiffs would rely on their
> statements of the Funds' [net asset value].  Plaintiffs allege that the
> [net asset value] was the only measure by which they could
> evaluate shares in the Funds in order to make investment decisions.
> Plaintiffs also allege that [defendants'] marketing materials
> evinced the understanding that as fund administrator, [defendants]
> would 'serve the interests of investors by providing them with the
> independent, accurate and timely information they need to make
> informed decisions about their investments.'  These allegations are
> adequate . . . to allege a relationship which may give rise to a duty
> of care.

Id.  Here, by contrast, HSBC alleges only that Adelphia was a creditor in NFHLP's bankruptcy

and it had information (that had also been published in the company's Form 8-K) regarding the

Special Committee's investigation. Shapiro Decl. Ex. B (HSBC Counterclaim, ¶¶ 22 to 39.)

Unlike the defendants in Pension Comm., Adelphia was not the sole source of the information

HSBC alleges should have been divulged at the Sale Hearing.  HSBC also does not allege that

Adelphia was established to "serve the interests of [HSBC] by providing [it] with the

independent, accurate and timely information [it] need[ed] to make informed decisions about

[the sale of the Sabres' assets]."[4]

HSBC's reliance on In re Rickel & Assocs., Inc., 272 B.R. 74, 103 (Bankr. S.D.N.Y.

2002), is equally unavailing.  That case involved the duty one member of an unsecured creditors'

committee owed to the other members of the committee; it did not involve the "duty" of a

creditor (Adelphia) to a non-party to a bankruptcy (HSBC).  Indeed, the court specifically held

---

[4] In its opening brief, the Trust also highlighted the fact that Judge Kaplan, the trial judge on HSBC's cross-claim seeking an order estopping the Trust from prosecuting Claims 17-24, specifically held, after extensive discovery, that Adelphia did not have a "duty to speak."  (Opinion and Order at 41.)  HSBC does not address this fact at all.

that the defendant did *not* owe a duty to subordinated creditors who were not members of the committee.  <u>Id</u>.[5]

In a related vein, the law of negligent misrepresentation "requires that a defendant make some statement 'expressed directly' to the plaintiff."  <u>In re AHT Corp.</u>, 292 B.R. 734, 746-47 (S.D.N.Y. 2003).  That didn't happen here.  Adelphia did not make any statement "expressed directly" to HSBC and HSBC does not allege as such.  This is a further independent reason for dismissing HSBC's first counterclaim.

> **2.      HSBC Has Not Alleged That Adelphia**
> **Misrepresented A Present, Material Fact.**

The Trust demonstrated in its opening brief that Adelphia's silence about possible future claims against the Sabres Banks was, at most, promissory in nature in that it related to a future event and was not a present, material fact for purposes of negligent misrepresentation.  <u>Hydro Investors</u>, 227 F.3d at 20-21.  HSBC concedes that misrepresentations about possible future acts that may never come to fruition are not actionable under a theory of negligent misrepresentation. (HSBC Opp. Br. at 6.)  That admission should sound the death knell for this claim.

In order to argue around this common law maxim, HSBC contends that Adelphia misrepresented the "fact" that the Sabres Banks had an interest in the liens being released at the time of the Sale Hearing.  <u>Id</u>.  This argument, however, fails to acknowledge that HSBC's interest in the assets being sold was contingent on future, possible events.  The only basis upon which HSBC could have had an interest in the HSBC Arena and the hockey team was because of future, potential actions.  That is, HSBC could only have had an interest in the assets being sold

---

[5] As the Trust also discussed in its opening brief, the cases cited by HSBC before Judge McKenna and again before this Court, <u>In re Teligent, Inc.</u>, 282 B.R. 765 (Bankr. S.D.N.Y. 2002), and <u>In re Women First Healthcare, Inc.</u>, 332 B.R. 115 (Bankr. D. Del. 2005), do not involve the duty owed by a creditor to non-parties to a bankruptcy.  (Trust's Brief in Support of Motion to Dismiss HSBC Counterclaims at 15-16.)  HSBC does not address this point in its Opposition Brief.

on April 10, 2003 (the Sale Hearing) *if*, in the future, Adelphia brought fraudulent conveyance claims against the Sabres Banks, and *if* those claims were successful, and *if* the only remedy was a return of the loans to the Sabres Banks, because then, and only then, would HSBC have a right to foreclose on the assets securing the loans and use that money to pay a judgment on a fraudulent conveyance claim.  HSBC's interest in the liens was contingent on a "future event[] that might never come to fruition," Hydro Investors, 227 F.3d at 20-21, and Adelphia's silence at the Sale Hearing cannot, as a matter of law, be the basis for a claim for negligent misrepresentation.  This conclusion is even more apparent for the aiding and abetting claim because rescission and a return of the liens are not even available as remedies in such a claim.  Thus, there was no way that HSBC could have a springing interest in the property in the future in the aiding and abetting context.

### 3.    HSBC Cannot Allege, As A Matter Of Law, Reasonable Reliance On Adelphia's Silence At The Sale Hearing.

The Trust demonstrated in its opening brief that, as a matter of law, HSBC could not have reasonably relied on Adelphia's silence at the Sale Hearing about its Special Committee's investigation because that information was in the public record.  HSBC concedes that the law of negligent misrepresentation (as opposed to judicial estoppel), provides that if "the plaintiff has the means of knowing . . . the truth . . . of the representation . . . he will not be heard to complain that he was induced to enter into the transaction by misrepresentations."  (HSBC Opp. Br. at 8) (quoting Schlaifer v. Estate of Andy Warhol, 119 F.3d 91, 97 (2d Cir. 2007).)

To deal with the fact that Adelphia's publicly-filed Form 8-K discussed the Special Committee's investigation of John Rigas and the Buffalo Sabres, HSBC is forced to contend that Adelphia's SEC filing was insufficient to put HSBC on notice that Adelphia might pursue fraudulent conveyance claims against the Sabres Banks.  (HSBC Opp. Br. at 8-9.)  This

argument flatly contradicts the position adopted by HSBC before the Second Circuit.  In the Second Circuit, HSBC argued that the same Form 8-K demonstrated Adelphia's "actual knowledge of the facts giving rise to the alleged fraudulent conveyance claims."  Shapiro Decl., Ex. C (HSBC Second Circuit Brief at 38-39.)  The Second Circuit relied on HSBC's argument that, because of the facts contained in the Form 8-K, Adelphia must have known, or should have known, that it had potential fraudulent conveyance claims against the Sabres Banks.  Adelphia Recovery Trust, 634 F.3d at 685.  HSBC, therefore (and ironically), is judicially estopped from arguing that the publicly-filed Form 8-K did *not* contain facts sufficient to put HSBC on notice that Adelphia was considering bringing fraudulent conveyance claims against it.  Simon v. Safelite Glass Corp., 128 F.3d 68, 72 (2d Cir. 1997) (judicial estoppel applies where a court previously "accepted the claim at issue by rendering a favorable decision").

Moreover, a review of Adelphia's May 24, 2002 Form 8-K (which was filed nearly a year before the Sale Hearing), demonstrates the weakness of HSBC's assertion.  Shapiro Decl., Ex. D.  As the Second Circuit noted, the document disclosed that "[t]he Special Committee is . . . investigating whether the Company received fair value for payments it made pursuant to [arrangements between Adelphia and NFHLP]."  Adelphia Recovery Trust, 634 F.3d at 685 (emphasis added).  This Court also noted that, because of Adelphia's Form 8-K, "[e]ven if Adelphia did not have 'full knowledge' in April 2003, of all facts necessary to support avoidance claims against the Banks, it certainly knew of facts showing at least the possibility of such claims."  HSBC Bank USA, N.A. v. Adelphia Communs. Corp., No. 07 Civ. 553A, 2009 U.S. Dist. LEXIS 10675, *37-39 (W.D.N.Y. Feb. 12, 2009) (emphasis added).  This Court further noted that the possibility of fraudulent conveyance claims was evident in Adelphia's July 24, 2002 complaint against NFHLP.  Id.

In short, Adelphia's Form 8-K and Adelphia's complaint against NFHLP clearly put the public on notice that Adelphia was investigating whether the purchase of the Construction and Revolver Loans were, among other things, fraudulent conveyances.  HSBC was on notice that it might be sued for fraudulent conveyance a year before the Sale Hearing and, as a matter of law, it cannot allege reasonable reliance on Adelphia's silence at the Sale Hearing.  In re Citigroup, Inc., Auction Rate Sec. Mktg. Litig., No. 08 Civ. 3095, 2011 U.S. Dist. LEXIS 19854, *26-27 (S.D.N.Y. Mar. 1, 2011) (misrepresentation claim dismissed because plaintiff could not rely on statements contradicted by publicly available information); Washington Temple Church of God in Christ, Inc. v. Global Props. & Assoc., Inc., 841 N.Y.S.2d 824 (Sup. Ct. 2007) (plaintiff cannot bring negligent misrepresentation claim where a search of public records would have put plaintiff on notice of the need to investigate).

In response, HSBC argues that Adelphia's Form 8-K could not have put it on notice of potential fraudulent conveyance claims because the document "did not expressly disclose that Adelphia intended to pursue fraudulent conveyance actions against HSBC."  (HSBC Opp. Br. at 9.)  Adelphia's Form 8-K, however, did not need to expressly disclose that Claims 17-24 definitively would be filed against HSBC on a date certain.  In order to defeat a claim of reasonable reliance in a negligent misrepresentation action, the publicly available document need not expressly contradict the defendant's statements; it need only include "critical information" putting a sophisticated businessman on notice that more questions needed to be asked.  Siemens Westinghouse Power Corp. v. Dick Corp., 299 F. Supp. 2d 242, 247 (S.D.N.Y. 2004) ("under New York law, where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance.") (internal quotations omitted).  Adelphia's

Form 8-K was more than sufficient to put HSBC on notice that Adelphia was investigating whether these transactions were fraudulent conveyances.

## II.

### THE INDEMNIFICATION AND
### CONTRIBUTION COUNTERCLAIMS SHOULD BE DISMISSED.

The Trust established in its opening brief that HSBC's counterclaim for indemnification should be dismissed because, as a matter of law, a party cannot be indemnified for losses stemming from the intentional tort of aiding and abetting a breach of fiduciary duty or from the intentional acts that gave rise to the Trust's equitable subordination claim.  HSBC concedes this point.  (HSBC Opp. Br. at 12-13.)  Switching gears, HSBC now asserts that it is seeking indemnification only for the costs it incurred in defending against the Trust's fraudulent conveyance claims based on an indemnification agreement it signed with John Rigas (purportedly on behalf of Adelphia) in March 2000.

As demonstrated below, however, HSBC's new indemnification claim against Adelphia based on this March 2000 agreement arose before Adelphia filed for bankruptcy (i.e., a "pre-petition claim") and HSBC was obligated to file a Proof of Claim in the Adelphia bankruptcy by the "Bar Date" (defined below).  Because it did not do that, its indemnification claim is "disallowed" under Adelphia's plan of reorganization and hence its counterclaim must be dismissed.

**A.      HSBC Cannot Seek Indemnification From Adelphia For Costs Incurred In Defending The Fraudulent Conveyance Claims Because It Did Not File A Proof Of Claim In Adelphia's Bankruptcy.**

The indemnification agreement on which HSBC now relies was signed on March 17, 2000 between John Rigas, purportedly on behalf of Adelphia, and HSBC (and others) (the "Indemnification Agreement").  Shapiro Decl., Ex. E.  Paragraph 2 of the Indemnification

Agreement purports to obligate Adelphia to indemnify and hold HSBC harmless from, among other things, any cost that HSBC may sustain in connection with any claim relating to the sale of the Construction Loan.  Id.

On June 25, 2002, two years after the Indemnification Agreement was signed, Adelphia filed for bankruptcy protection.  (Bankr. S.D.N.Y. Docket No. 1.)  One year after that, on July 3, 2003, Adelphia's creditors' committee filed its fraudulent conveyance claim against HSBC. (Bankr. S.D.N.Y. Adv. Pro. Docket No. 1.)  The fraudulent conveyance claim sought the return of approximately $13 million from HSBC "related to the Buffalo Sabres."  Complaint, Twenty-First Claim for Relief, ¶ 733.  The $13 million was comprised of:  (i) approximately $11 million transferred from Adelphia to HSBC on or about March 22, 2000, in connection with Adelphia's purchase of the Construction and Revolver Loans; and (ii) approximately $2 million in principle and interest payments on the Construction, Revolver, and Concession Loans.  Id. at ¶ 732.  Claim 21 was, therefore, related to, among other things, the pre-petition sale of the Construction Loan.

On October 24, 2003, three months after Claim 21 was filed, Judge Gerber entered an "Order Pursuant To Bankruptcy Rule 3003(c)(3) Setting A Final Date To File Proofs Of Claim" in the Adelphia bankruptcy.  Shapiro Decl., Ex. F.  Judge Gerber ordered that all entities asserting a pre-petition claim against Adelphia (i.e., a claim that arose on or before June 25, 2002, the filing of Adelphia's Chapter 11 petition), must "file a proof of such claim [before] January 9, 2004 (the 'Bar Date')."  HSBC, however, did not file a Proof of Claim in In re Adelphia by the Bar Date seeking indemnification for the costs it incurred in defending Claim 21.  In fact, HSBC did not file any Proof of Claim in Adelphia's bankruptcy.  Id.[6]

---

[6] Instead of filing a Proof of Claim for the *pre-petition* obligation allegedly incurred by Adelphia based on the March 17, 2000 Indemnification Agreement by the Bar Date of January 9, 2004, HSBC, on March 23, 2007, filed a *post-petition* Administrative Claim based on Adelphia's allegedly wrongful behavior at the sale of the Sabres' assets on April 10, 2003.  (Bankr. S.D.N.Y. Docket No. 13,293).

HSBC's failure to file a Proof of Claim by the Bar Date eliminates any right it might have had to indemnification under the March 2000 Indemnification Agreement.  For purposes of the Bankruptcy Code, the term "claim" means "[a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  11 U.S.C. § 101(5).  When this broad definition of "claim" was adopted by Congress in 1978, it dramatically expanded the previous definition.  As explained in the Legislative Statement accompanying the statute,

> By this broadest possible definition and by the use of the term throughout the title 11 . . . the bill contemplates that all legal obligations of the debtor, *no matter how remote or contingent*, will be able to be dealt with in the bankruptcy case.  It permits the broadest possible relief in the bankruptcy court.

11 U.S.C. § 101 (emphasis added).

HSBC's alleged right to indemnification from Adelphia based on the Indemnification Agreement was an unliquidated, unmatured, and contingent "right to payment" and, therefore, a pre-petition "claim" under the Code.  As the Second Circuit has explained, the term "claim" is broad enough to encompass (as in this case), an unliquidated, contingent right to payment under a pre-petition indemnity agreement, even though the triggering contingency does not occur until after the filing of the petition.  In re Manville Forest Prods., 209 F.3d 125, 129 (2d Cir. 2000) (claim for indemnification that arose out of pre-petition indemnification agreement is denied even though the contingency requiring indemnification was triggered after confirmation of the debtor's reorganization plan because, "a right to payment based on a written indemnification contract arises at the time the indemnification agreement is executed.").  As a matter of federal common law, "a contractual indemnification claim exists as a contingent claim against the indemnitor as of the date the indemnification agreement is executed."  In re Houbigant, Inc., 188 B.R. 347, 358-59 (Bankr. S.D.N.Y. 1995).

HSBC's counterclaim for indemnification, therefore, is a "claim" against Adelphia that arose in March 2000 prior to the filing of Adelphia's bankruptcy petition in June 2002.  "The fact that the contingency . . . materialized post-petition [here, the filing of Claim 21 in July 2003] does not transmogrify the claim into a post-petition claim, but merely means that the contingent claim moved closer to becoming liquidated upon the happening of that contingency."  <u>In re Manville Forest Prods.</u>, 209 F.3d at 129.  Because HSBC did not file a Proof of Claim by the Bar Date its indemnification claim is "disallowed" pursuant to Paragraph 11.4 of the First Modified Fifth Amended Joint Chapter 11 Plan For Adelphia Communications Corporation and Certain of its Affiliated Debtors:  "Any Claims not set forth in the Claims Register . . . shall be deemed Disallowed under the Plan unless and until Allowed by Final Order."  Shapiro Decl., Ex. G.  And because HSBC's indemnification claim has been "disallowed," its counterclaim seeking indemnification has no legal basis and should be dismissed.  <u>See</u> <u>In re Manville Forest Prods.</u>, 209 F.3d at 129.

**B.     There Is No Claim Under New York Law For Contribution To Defray Attorneys' Fees Expended In Defending A Fraudulent Conveyance Claim.**

The Trust established in its opening brief that HSBC is not entitled to contribution from Adelphia, if HSBC is found liable for aiding and abetting, because Adelphia did not commit any act that would entitle the bank to contribution.  HSBC concedes this point.  (HSBC Opp. Br. at 14.)  Therefore, rather than seeking contribution for its aiding and abetting activities, HSBC now seeks contribution from Adelphia to help defray the attorneys' fees the bank incurred in defending the fraudulent conveyance claims.  <u>Id</u>.  In making this claim, however, HSBC does not cite a single case, statute, or rule for the proposition that a fraudulent conveyance defendant is entitled to contribution to defray its legal costs from a plaintiff who remained silent about possible future causes of action at a Section 363 sale hearing.  In fact, the entirety of the second

section of HSBC's brief is devoted to indemnification, not contribution. For that reason alone, its contribution counterclaim should be dismissed.

Moreover, an examination of the law of contribution also demonstrates that there is no basis for seeking contribution in order to reduce the amount spent on defending a fraudulent conveyance claim. Contribution is only available when the party seeking contribution is liable in tort. Perkins Eastman Architects, P.C. v. Thor Eng'rs, P.A., 769 F. Supp. 2d 322, 326 (S.D.N.Y. 2011) ("the existence of some sort of tort liability is a prerequisite to application of the [contribution] statute"); Tower Bldg. Restoration, Inc. v. 20 E. 9th St. Apt. Corp., 744 N.Y.S.2d 319, 320 (1st Dep't 2002) (tort liability is "the necessary predicate . . . for a contribution action"). Contribution claims, therefore, are dismissed if the plaintiff is seeking contribution for anything other than a tort. Structure Tone, Inc. v. Universal Servs. Group, Ltd., 929 N.Y.S.2d 242, 2011 NY Slip Op 6459, 3 (1st Dep't 2011) (no contribution is available for a claim based in contract rather than tort). As demonstrated above, attorneys' fees are not tort damages. In other words, one is not liable in tort if one has to pay attorneys' fees in defending an action. Therefore, when HSBC paid its lawyers to defend Claims 17-24, it was not paying a judgment for a tort. Adelphia cannot be made to contribute to those payments and HSBC's contribution counterclaim has no legal basis and should be dismissed.[7]

---

[7] The Trust also pointed out in its opening brief that contribution requires a breach of duty by Adelphia and liability by HSBC for the "same injury" for which it seeks contribution. HSBC does not address these arguments in its Opposition Brief.

## **CONCLUSION**

For the foregoing reasons, HSBC's counterclaims should be dismissed.

Dated: January 20, 2012
New York, New York

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP

By:   /s/ David J. Shapiro
David M. Friedman
(Dfriedman@kasowitz.com)
Michael C. Harwood
(Mharwood@kasowitz.com)
David J. Shapiro
(Dshapiro@kasowitz.com)
Aaron M. Bell
(Abell@kasowitz.com)
1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700

Counsel for Adelphia Recovery Trust